**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| QUEENIE FAISON, | |
|       Plaintiff, | |
|       v. | Civil Action No. 08-00714 (CKK) |
| DAVITA VANCE-COOKS, Public Printer of the United States, | |
|       Defendant. | |

**MEMORANDUM OPINION**
(October 9, 2012)

Plaintiff Queenie Faison ("Faison"), an employee of the United States Government Printing Office (the "GPO"), brings this action against Defendant Davita Vance-Cooks[1] in her official capacity as the Public Printer of the United States, alleging that the GPO discriminated and retaliated against her on the basis of disability, race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e1 *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act") and/or the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). *See* Compl., ECF No. [1].  As both parties agree that the GPO is a covered employer under the ADA, Faison concedes that reliance on the Rehabilitation Act as the basis for her disability discrimination claim is unnecessary. [2]

---

[1] Ms. Vance-Cooks was automatically substituted as the defendant upon her appointment to the position of the Acting Public Printer of the United States.  *See* FED. R. CIV. P. 25(d).

[2] Specifically, the GPO does not dispute that, as a legislative instrumentality of Congress, it is covered by the ADA.  *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Renewed Mot. to Dismiss or in the Alternative for Summ. J., ECF No. [44-3], at 10–11 (citing 42 U.S.C. §12209(c)(4)).  However, the GPO argues that, inasmuch as the GPO is a legislative branch agency, it is not

Accordingly, the Court shall review Faison's disability discrimination claims within the

framework of the ADA.   Faison asserts two basic claims against the GPO.  First, Faison alleges

that the GPO violated the ADA by failing to reasonably accommodate her disability following

her return to work on or about April 14, 2005 after undergoing left carpal tunnel surgery

("Failure to Accommodate Claim" or "Claim One").   Second, Faison alleges that she was subject

to a hostile work environment and/or a pattern of discriminatory or retaliatory conduct on the

basis of disability, race, sex and/or age ("Hostile Work Environment Claim" or "Claim Two").

Presently before the Court is the GPO's [44] Renewed Motion to Dismiss, or in the Alternative,

for Summary Judgment, which Faison has opposed.  Upon careful consideration of the parties'

submissions, the relevant authorities, and the record as a whole,[3] the GPO's motion shall be

---

subject to the Rehabilitation Act, which applies only to the executive branch and certain
enumerated legislative agencies, not including the GPO.  *Id.* (citing 2 U.S.C. § 1301, 1302).  The
Court agrees.  *See Collins v. James*, 171 Fed. Appx. 859 (D.C. Cir. 2005) (per curiam) ("It is
undisputed that the Rehabilitation Act, by its own terms, does not apply to the GPO[.]" (citations
omitted)), *cert. denied*, 547 U.S. 1098 (2006).  Faison states in her opposition that to the extent
the GPO admits that it is covered by the ADA, reliance on the Rehabilitation Act as the basis for
her disability discrimination claim is unnecessary.  Pl.'s Mem. Opposing Def.'s Renewed Mot. to
Dismiss and/or for Summ. J., ECF No. [48], at 3.  Indeed, the standards for determining an
employment related violation under both statutes are substantively the same.  *See* 29 U.S.C. §
794(d) ("The standards used to determine whether [The Rehabilitation Act] has been violated in
a complaint alleging employment discrimination under this section shall be the standards applied
under [the provisions of] the Americans with Disabilities Act.").  *See also Scarborough v.
Natsios*, 190 F. Supp. 2d 5, 19 n.10 (D.D.C. 2002) ("Because of the similarities between the
Rehabilitation Act and the ADA, cases interpreting either are applicable or interchangeable"
(quotation marks and citation omitted)).
[3] While the Court renders its decision today on the record as a whole, its consideration has
focused on the following documents, listed in chronological order of their filing:  Def.'s Mem. of
P. & A. in Supp. of Def.'s Renewed Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s
Mem."), ECF No. [44-3]; Def's Stmt. of Material Facts as to which There Is No Genuine Issue
("Def.'s Stmt."), ECF No. [44-1]; Pl.'s Mem. Opposing Def.'s Renewed Mot. to Dismiss and/or
for Summ. J. ("Pl.'s Opp'n"), ECF No. [48]; Pl.'s Separate Statement of Genuine Issues of
Material Fact Opposing Summary Judgment ("Pl.'s Stmt."), ECF No. [48-1]; Def.'s Reply to
Pl.'s Mem. Opposing Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Reply"),
ECF No. [52].  In an exercise of its discretion, the Court finds that holding oral argument on the

**GRANTED-IN-PART** and **DENIED-IN-PART**.  Specifically, the Court shall **ENTER**

judgment in the GPO's favor on Claim Two, the Hostile Work Environment Claim, because

Faison has failed to adduce sufficient facts that would allow a reasonable trier of fact to conclude

that Faison's allegations of wrongful conduct rose to the level of a hostile work environment, or

that such alleged conduct was undertaken with the requisite discriminatory or retaliatory intent.

However, the Court concludes that genuine questions of material fact exist which preclude

summary judgment with respect to Claim One, the Failure to Accommodate Claim.

Accordingly, only Claim One, through which Faison maintains that the GPO failed to reasonably

accommodate her disability following her return to work on or about April 14, 2005 after

undergoing left carpal tunnel surgery, survives the Court's decision today.

## I.  BACKGROUND

Faison, an African American and American Indian female, born in September, 1944, is

currently employed as a Supervisory Supply Technician at the GPO's Laurel Distribution

Warehouse ("Laurel").[4]  Def.'s Stmt. ¶ 1; Pl.'s Stmt. ¶ 1.  Faison has been employed by the GPO

---

GPO's Renewed Motion for Summary Judgment would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[4] The Court begins its discussion of the facts by noting that this Court strictly adheres to the text of Local Civil Rule 7(h)(1), which requires that a party submitting a motion for summary judgment attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement.  *See* LCvR 7(h)(1).  The party opposing such a motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation. *See id.*  Where the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted.  *Id.*  As the District of Columbia Circuit has emphasized, "[LCvR 7(h)(1) ] places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).  As such, in resolving the instant summary judgment motion, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in

in various positions at both Laurel and the GPO Office located in Washington, D.C. ("Main GPO") since October 19, 1970. *Id.* Faison alleges that, as a result of multiple orthopedic injuries, including on-the-job injuries to her knee and wrist, she is substantially limited in several major life activities, and is therefore an individual with a disability. Compl. ¶ 13; Pl.'s Stmt. ¶¶ 70–71.

On April 25, 2008, Faison filed her complaint in the instant action, alleging that the GPO discriminated against her on the basis of her race, color, sex, disability, and age, and that the GPO retaliated against her for engaging in protected activity. *See* Compl., ECF No. [1], at ¶ 1. At the close of discovery, the GPO moved to dismiss, or in the alternative, for summary judgment, *see* Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Original Motion for Summary Judgment"), ECF No. [32], and Faison filed her opposition, *see* Pl.'s Mem. Opposing Def.'s Renewed Mot. to Dismiss and/or for Summ. J., ECF No. [33]. Upon reviewing the parties' submissions in connection with the GPO's Original Motion for Summary Judgment, the Court found that "the GPO's motion and Faison's opposition [were] not in direct conversation" and concluded that "it would benefit from some clarification regarding the precise contours of the claims that Faison intends to pursue in this action." Order (Apr. 29, 2011), ECF No. [37], at 1. The Court observed that, based upon Faison's opposition, it appeared that Faison did not actually seek to pursue the vast majority of allegations which the GPO had identified in its moving papers as discrete claims of discrimination or retaliation.[5] *Id.* at 2. The Court also noted

_____

opposition to the motion." LCvR 7(h)(1). Where appropriate, the Court also cites directly to evidence in the record, or if undisputed and not otherwise evidenced, the parties' pleadings to provide additional information not covered in either of the parties' statements of material facts.
[5] Specifically, the Court observed: "[I]n crafting its Motion for Summary Judgment, the GPO interpreted Faison as asserting somewhere in the neighborhood of twenty six "claims," and tailored its arguments in favor of dismissal accordingly. However, in opposing the GPO's Motion for Summary Judgment, Faison faulted the GPO for failing to focus on what she

that the statements made by Faison in her opposition were "equivocal" and failed to "crystallize for the Court the claims that are actually at issue in this action." *Id*. at 3.  Accordingly, the Court proceeded to identify what it understood to be Faison's claims in the action and directed Faison to:  indicate whether the Court's understanding of her claims was correct; state clearly the ways in which the Court's understanding was incorrect, if any; specify whether her claim for hostile work environment and/or pattern of discrimination or retaliation is alleged to be on the basis of disability, race, sex, age, participation in protected activity, or some combination thereof; identify any additional factual allegations beyond those identified by the Court that Faison contends comprise component acts of her claim for hostile work environment and/or pattern of discrimination or retaliation; and specifically identify any additional discrete claims of discrimination or retaliation that she intends to pursue in this action, if any. *Id*. at 3–4.

On August 17, 2011, upon reviewing Faison's response,[6] *see* Mem. of Pl. in Resp. to Order re Summ. J., ECF No. [38], the Court issued a [39] Memorandum Order describing in detail the precise contours of the claims that Faison is pursuing in this case and denying without prejudice the GPO's Original Motion for Summary Judgment, with leave to re-file after tailoring the motion to speak to those claims.  The GPO subsequently filed the motion presently before

---

described as her "central claim" that the GPO failed to provide a reasonable accommodation of her disabilities, but then proceeded to argue that an unspecified universe of other "wrongful conduct" by the GPO was discriminatory or retaliatory." Order (Aug. 17, 2011), ECF No. [39], at 2 (citing Pl.'s Mem. Opposing Mot. to Dismiss and/or for Summ. J., ECF No. [33]).

[6] Faison filed her response to the Court's April 29, 2011 Order on May 12, 2011.  *See* Mem. of Pl. in Resp. to Order re Summ. J., ECF No. [38].  Therein, Faison represents that "[t]he Court correctly notes that [she] is pursuing two 'claims' inasmuch as the five claims for relief in her [C]omplaint … are based on two general sets of facts, one arising from [the] GPO's failure to accommodate her disabilities, and the other arising from adverse actions, harassment, and a hostile work environment motivated by retaliatory and/or discriminatory animus," and confirms that "[t]he Court's summary of the claims is correct." *Id*. at 1–2.  Significantly, Faison also confirms that "[t]here are no additional discrete claims of discrimination or retaliation that [she] intends to pursue in this action." *Id*. at 5.

this Court.  As memorialized in this Court's August 17, 2011 Order, the Court understands

Faison to be pursuing two claims, and only two claims, the contours of which are set forth below.

### A.  Claim One (Failure to Accommodate)

Claim One is a discrete claim for disability discrimination arising under the ADA.  In her

opposition to the GPO's Original Motion for Summary Judgment, Faison characterized this as

"the central claim in this case."  *See* Pl.'s Mem. Opposing Mot. to Dismiss and/or for Summ. J,

ECF No. [33], at 4.  The basis of the claim is this – Faison alleges that the GPO failed to

reasonably accommodate her disability following her return to work on or about April 14, 2005

after undergoing left carpal tunnel surgery by (a) denying her request for "limited duty" and/or to

work no more than five to six hours each day; (b) requiring her to commute to Laurel instead of

reassigning her to a temporary or permanent position at Main GPO; (c) failing to promptly

provide her with working voice-activated computer equipment to reduce the stress on her wrists;

and (d) generally failing to engage in an interactive process to accommodate her claimed

disability.  Order (Aug. 17, 2011), at 6.

### B.  Claim Two (Hostile Work Environment)

Claim Two is a single claim for hostile work environment and/or a "pattern of

discriminatory or retaliatory conduct."  The hostile work environment or pattern of wrongful

conduct is alleged to have been retaliatory and/or discriminatory on the basis of disability, race,

sex, and/or age.  The  factual  basis  of  the  claim  is this—Faison alleges that she was subjected

to hostile or abusive working conditions because (a) her immediate supervisor, Arthur Miles,

sent her aggressive and insulting e-mails, berated her in front of others, excluded her from staff

meetings, required her to check in each day upon arriving at work, ignored her when officials

visit from the GPO's main office, and permitted his assistant, Diana Mayernick, to make

derogatory statements to her; (b) she has been denied overtime work and pay on several occasions; (c) her second-level supervisor, Lisa Williams, sent her nasty and intimidating e-mails, told other supervisors and employees that she did not like Faison, commented at a November 2005 meeting that she was going to make Faison miserable, and assured Janet McCaskill and Leola Keaton that she was going to make Faison so miserable that she would be happy to retire; (d) she received a poor performance evaluation in 2005; (e) she was assigned additional duties in May 2005 but was not promoted to a grade commensurate with her duties; (f)  her travel reimbursement requests were "unduly scrutinized" in 2007; (g) the GPO failed to reasonably accommodate her disability following her return to work on or about April 14, 2005 after undergoing left carpal tunnel surgery by denying her request for "limited duty" and/or to work no more than five to six hours each day, requiring her to commute to Laurel instead of reassigning her to a temporary or permanent position at Main GPO, failing to promptly provide her with working voice-activated computer equipment to reduce the stress on her wrists, and generally failing to engage in an interactive process to accommodate her claimed disability; (h) the GPO ordered an inspector general investigation into whether Faison was injured in the line of duty; and (i) the GPO attempted to have Faison criminally investigated.  Order (Aug. 17, 2011), at 6.

## II.   LEGAL STANDARD

Although styled in the alternative as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant's motion turns upon consideration of materials that are outside the scope of the pleadings.  Indeed, in the course of briefing the motion, both parties effectively treat the motion as one for summary judgment. For her part, Faison in no way suggests either that she has been deprived "a reasonable opportunity to present all the material that is pertinent to the motion," FED. R. CIV. P. 12(d), or

that she "cannot present facts essential to justify [her] opposition," FED. R. CIV. P. 56(d).  To the

contrary, in opposition to the GPO's motion, Faison has introduced, and relies heavily upon,

materials outside the scope of the pleadings.  Accordingly, the Court shall treat the motion solely

as one for summary judgment.[7]

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and [that it] ... is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact.  *Id*.  Accordingly, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Nor may summary judgment be avoided

based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning

---

[7] It should be noted that the GPO's briefing focuses considerably on Faison's failure to exhaust her administrative remedies.  *See* Def.'s Mem. at 16–22; 27–29.  To be sure, motions to dismiss for failure to exhaust administrative remedies are ordinarily appropriately analyzed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Hopkins v. Whipple*, 630 F. Supp. 2d 33, 40 (D.D.C. 2009).  However, "when 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment[.]'" *Highland Renovation Corp. v. Hanover Ins. Group*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009).  Because here, the parties refer to materials outside the pleadings, including declarations, medical reports, and the parties' correspondence, to determine the deadline by which Faison should have raised her administrative complaints with the GPO's Equal Employment Opportunity ("EEO") Office, the GPO's motion to dismiss Faison's claims shall be converted in a motion for summary judgment.  *See, e.g.*, *Hairston v. Tapella* 664 F. Supp. 2d 106, 109 (D.D.C. 2009) (converting defendant's 12(b)(6) motion to dismiss to a motion for summary judgment where plaintiff "raised a genuine issue of material fact bearing on whether the deadline for [plaintiff] to have contacted the EEO should be tolled."); *Wilderson v. Snow*, Civ.A. No. 04-0708, 2006 WL 571930, at *1 (D.D.C. Mar. 7, 2006) (converting defendant's motion to dismiss to a motion for summary judgment where parties referred to material outside the pleadings regarding whether plaintiff complied with obligation to timely contact an EEO counselor).

that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-

movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record—including deposition testimony, documentary evidence, affidavits or

declarations, or other competent evidence—in support of her position, or (b) demonstrate that the

materials relied upon by the opposing party do not actually establish the absence or presence of a

genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual

basis in the record cannot create a genuine dispute sufficient to survive summary judgment.

*Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C.

Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact," the district court may "consider the fact

undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make

credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the

light most favorable to the non-movant, with all justifiable inferences drawn in her favor.

*Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are

susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v.

Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477

U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is

some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); "[i]f the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Be that as it may, the plaintiff is not relieved of her burden to support her allegations with competent evidence. *Brown v. Mills*, 674 F.Supp.2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage she bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device – namely, "to weed out those cases insufficiently meritorious to warrant ... trial" – simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## III.  DISCUSSION

### A.  Claim One (Failure to Accommodate)

The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to … [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act defines discrimination to include the failure of a covered employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the

[employer's] business[.]" 42 U.S.C. § 12112(b)(5)(A).  The term "qualified individual with a

disability" means "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires."  42 U.S.C. § 12111(8).  The term "reasonable accommodation" is

defined, in relevant part, as ""[m]odifications or adjustments to the work environment, or to the

manner or circumstances under which the position held or desired is customarily performed, that

enable an individual with a disability who is qualified to perform the essential functions of that

position[.]"  29 C.F.R § 1630.2(o)(ii).  To establish a prima facie case of discrimination for

failure to accommodate, a plaintiff must show that she is a "qualified individual with a

disability" and that her employer failed to grant her the "reasonable accommodations" her

disability necessitated.  *Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).  If such

evidence is produced, it is up to the employer to submit rebuttal evidence; the ultimate burden,

however, remains with the plaintiff.  *Barth v. Gelb*, 2 F.3d 1189, 1185–86 (D.C. Cir. 1993)

(explaining that the three part burden-shifting framework set forth for Title VII cases in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), is

not appropriate for reasonable accommodation claims, and that such claims can be tested through

the "application of traditional burdens of proof").  *See also Aka v. Wash. Hosp. Ctr.*, 156 F.3d at

1288.

Importantly, prior to seeking relief in federal court, an ADA plaintiff must timely exhaust

her administrative remedies by filing an Equal Employment Opportunity Commission ("EEOC")

charge and "giving [her employing] agency a chance to act on it." *Marshall v. Fed. Express

Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (citing 42 U.S.C. § 12117(a); *Park v. Howard

Univ.*, 71 F.3d 904 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996)).  These administrative

time limits are not jurisdictional but rather are akin to statutes of limitations.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  Ordinarily, "the plaintiff who fails to comply, to the letter, with administrative deadlines … will be denied a judicial audience."  *Brown v. Marsh*, 77 F.2d 8, 13 (D.C. Cir. 1985) (internal quotation marks omitted).

Turning to the case at hand, on May 5, 2003, Faison underwent surgery on her right knee to repair a meniscus tear suffered by her in or around 2002.  Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2. Pl.'s Ex. 61 (Decl. of Queenie Faison ("Faison Decl.") ¶ 3).  Upon her return to work on October 22, 2003, Faison was assigned to a light duty position in the Examination and Vouchers Branch of the Financial Management Division at Main GPO.  Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2; Pl.'s Ex. 61 (Faison Decl. ¶ 5).  Faison remained in her light duty position at Main GPO from October 22, 2003 until she underwent carpal tunnel surgery on her left hand and wrist on September 13, 2004.  Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.  Several months later, on April 14, 2005, Faison returned to work.  Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3.  At some point prior to her return to the GPO in April 2005, Faison requested of Albert Troupe, then Chief of GPO's Worker's Compensation Office, that she be permitted to return to the position she had held at Main GPO prior to undergoing carpal tunnel surgery.  *See* Compl. ¶¶ 15–16; Ans. ¶¶ 15–16.  Faison asserts that her October 2003 placement at Main GPO – which is an eighteen mile commute from her home, compared to Laurel, which is a thirty-six mile commute, in heavy traffic – had been a prior accommodation granted pursuant to her knee surgeon's instructions that she work in a light duty position as close to her home as possible, so as to minimize her commuting time and the stress it would place on her knee, and that this restriction had remained unchanged in Spring 2005.  Pl.'s Stmt. ¶¶ 7, 17; Pl.'s Ex. 61 (Faison Decl. ¶ 12).  However, Mr. Troupe informed Faison that the position at Main GPO was no longer available and instead instructed Faison to return to her earlier position of

record at Laurel.  Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3.  Following her return to Laurel, Faison alleges

that she initiated various communications with her direct and second level supervisors through

which she made renewed requests for a transfer to Main GPO, as well as requests for limited

hours and voice-activated computer equipment to accommodate her knee and wrist injuries, but

that such requests were ignored and/or unreasonably delayed.  *See generally* Compl.; Pl.'s

Opp'n; Pl.'s Ex. 61 (Faison Decl.).  Accordingly, Faison filed the instant complaint.

Faison alleges, and the GPO nowhere disputes, that as a result of her multiple orthopedic

injuries, Faison is substantially limited in several major life activities, and is therefore an

individual with a disability within the meaning of the ADA.  Pl.'s Stmt. ¶ 70-71. *See generally*

Def.'s Mem., Def.'s Reply.  The GPO similarly does not dispute that Faison is a "qualified

individual" as defined by the ADA, meaning that, with or without reasonable accommodation,

she could perform the essential functions of any of the positions she held or desired during the

time period relevant to her complaint.  *Id*.  Instead, the GPO argues that, as a preliminary matter,

because Faison failed to exhaust her administrative remedies with respect to Claim One(b) and

Claim One(c) before bringing this civil action, the Court should decline to consider those claims.

Second, the GPO argues that, for a myriad of reasons, it did not fail to reasonably accommodate

Faison's disability.  For the reasons set forth below, the Court declines to grant the GPO

summary judgment on either ground.

**1.  The GPO Has Not Shown Faison's Failure to Exhaust Administrative Remedies.**

The GPO does not dispute that Faison sufficiently exhausted her administrative remedies

with respect to Claims One (a) and (d),  *see* Def.'s Mem. at 4–5, 24–25; Def's Reply at 1–9, but

it maintains that the Court should decline to consider Claims One (b) and (c) – respectively,

allegedly requiring Faison to commute to Laurel instead of reassigning her to a temporary or

permanent position at Main GPO, and allegedly failing to promptly provide Faison with working voice-activated computer equipment to reduce the stress on her wrists – due to Faison's failure to timely raise those claims with the EEOC. *See* Def.'s Mem. at 4–5, 19. Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of proving, by a preponderance of the evidence, plaintiff's failure to exhaust. *Brown v. Marsh*, 777 F.2d at 13. The Court finds that the GPO has failed to meet this burden, as it has failed to demonstrate the absence of material fact regarding the deadlines by which Faison should have raised certain complaints with the GPO's EEO office, as well as regarding whether the complaints which Faison did raise sufficiently capture the claims she now brings before this Court.

Under the broad authority conferred upon it by Congress, the EEOC "has established detailed procedures for the administrative resolution of discrimination complaints" raised by federal employees. *Bowden*, 106 F.3d at 437. Specifically, if an individual believes that she has been unlawfully discriminated against, she must consult an EEOC counselor within forty-five days of the alleged discriminatory action to attempt an informal resolution of the matter. 29 C.F.R. § 1614.105(a)(1). The limitations period begins to run when the employee "knew, or should have known, about the alleged discriminatory action." *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). *See also Johnson v. Gonzalez*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (stating that the forty-five day period is triggered when the plaintiff has a "reasonable suspicion" that she has been the victim of discrimination). If the matter is not resolved informally after the counseling period, the employee must file with the EEOC a formal written administrative complaint against the agency. 29 C.F.R. § 1614.106. The agency is then obligated to conduct "an impartial and appropriate investigation of the complaint within 180 days of the filing of the

complaint unless the parties agree in writing to extend the time period." *Id.* § 1614.106(e)(2). After filing a formal written complaint, the employee may file a civil action once the agency issues an adverse final decision or if 180 days has elapsed without a decision. *Id.* § 1614.407(b).

Importantly, "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace" because "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Marshall v. Fed. Express Corp.*, 130 F.3d at 1098 (citation omitted). While the administrative charge requirement "should not be construed to place a heavy technical burden" on the plaintiff, it is "not a mere technicality" and the district court "cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the … administrative process." *Park*, 71 F.3d at 907 (internal quotation marks and citations omitted). If the employee later brings suit in federal court, she will be limited to pursuing those "claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* In other words, while every detail of the eventual complaint need not be presaged in the EEOC filing, the substance of the ADA claim must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.*

On November 20, 2005, Faison sought EEO counseling concerning allegations of disability discrimination. Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶ 8; Def.'s Ex. 1 (EEO Counseling Report, dated Nov. 22, 2005). She filed her formal complaint in Agency Case No. 06-05 with the GPO's EEO Office on December 14, 2005. Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶ 8; Def.'s Ex. 2 (EEO Complaint in Agency Case No. 06-05). As of the time Faison filed her complaint in the instant

litigation, Agency Case No. 06-05 had been pending for more than 180 days without final agency decision. Compl. ¶ 6.[8]

In its letter accepting Faison's complaint for investigation, the GPO's EEO Office described Faison's claim, in relevant part, as follows: "[w]hether Complainant was discriminated against on the basis of her disability (physical), when the [GPO] [ ] failed to respond to her doctor's request dated October 11 and 12, 2005, for limited light duty." Def.'s Ex. 3 (Letter from GPO Chief of Counseling and Complaints Process to Faison, dated Feb. 2, 2006). The parties do not dispute that in October 2005, the GPO received two medical reports from two separate doctors at George Washington University's Department of Orthopedic Surgery. *See* Def.'s Mem. at 25. The October 11, 2012 report was issued by Dr. Rober J. Neviaser, M.D., in connection with an examination of Faison's "hand and wrist-injury." Def.'s Ex. 1 (October 11, 2005 Medical Report), at 16. The October 12, 2012 report was issued by Dr. Paul A. Manner, M.D., in connection with an examination of Faison's "knee injury." Ex. 1 (October 12, 2005 Medical Report), at 15.

The GPO argues that only Claim One (a) – the GPO's alleged denial of Faison's request for "limited duty" and/or to work no more than five to six hours each day, and Claim One (b) – the GPO's alleged failure to engage in an interactive process to accommodate Faison's claimed disability – were properly exhausted through Agency Case No. 06-05 and thus ripe for this Court's consideration. The remaining two failure to accommodate claims, the GPO contends, must fail due to Faison's failure to timely raise them with an EEO counselor. *See* Def.'s Mem. at

---

[8] As set forth in the parties' statements of facts, since filing her administrative complaint in Agency Case No. 06-05, Faison has filed several other claims with the GPO's EEO office. *See* Def.'s Stmt. ¶¶ 12–15; Pl.'s Stmt. ¶¶ 12–15. Putting aside whether those additional claims were themselves timely filed, the parties nowhere contend, and nothing in the record supports, that any of these later complaints could serve as the basis for exhaustion of Claim One in this action. Accordingly, the Court need not and shall not consider them here.

4; Def.'s Reply 4–5, 19–20, 24–25.  Faison argues that the issues captured by Agency Case No. 06-05 are far broader and should be viewed as timely capturing the entirety of Claim One.  Pl.'s Stmt. ¶ 63.

Regarding Claim One (b) – the GPO's alleged requiring of Faison to commute to Laurel instead of reassigning her to a temporary or permanent position at Main GPO, as the record reflects, the formal charge filed by Faison in Agency Case No. 06-05 contains an unequivocal complaint about Mr. Troupe's refusal to find a position for her at Main GPO upon her return from carpal tunnel surgery and the effect thereof on her daily commute.  *See* Def.'s Ex. 2, at 5 (EEO Complaint in Agency Case No. 06-05).  The GPO argues, however, that Faison cannot now raise this issue in federal court because she was denied reassignment to Main GPO upon her return from carpal tunnel surgery in April 2005, but she did not contact an EEO counselor until November 2005 and thus failed to satisfy the forty-five day requirement mandated by 29 C.F.R. § 1614.105(a)(1).  Def.'s Reply, 19–20.

The GPO is correct that as a general matter, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire … constitute[] a separate actionable unlawful employment practice" requiring timely exhaustion of administrative remedies.  *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  However, pursuant to 29 C.F.R. § 1614.105(a)(2), an otherwise untimely complaint may be treated as timely if the employee "did not know and reasonably should not have [ ] known that the discriminatory matter … occurred."  This statutory language recognizes that "[a]n overly technical approach [to administrative exhaustion requirements] would improperly impede the goal of making federal employment free from proscribed discrimination." *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir.

17

1985).  Here, the Court finds that genuine questions of material fact as to when Faison knew, or reasonably should have known, of the GPO's alleged failure to accommodate her commuting needs preclude summary judgment on this claim.  *See, e.g.*, *Noisette v. Geithner*, 693 F. Supp. 2d 60 (D.D.C. 2010) (Genuine issues of material fact as to when Internal Revenue Service employee had a reasonable suspicion that he had been the victim of discrimination through the revocation of his selection for a vacant position precluded summary judgment on his Title VII claim, on grounds that he had failed to exhaust his administrative remedies by not timely contacting an EEO counselor).

It is undisputed that, as of April 14, 2005, Faison was aware that the GPO had declined to assign her to a position at Main GPO.  Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3.  Faison claims, however, that she believed that GPO management were continuing to search for an alternate position for her at Main GPO through the summer and fall of 2005.  Pl. Stmt. ¶ 64.  Specifically, Faison claims that she had been told by her superiors that Mr. Troupe and Kevin O'Toole, then director of Faison's division, were continuing to look for a permanent or temporary position to accommodate her, and that Faison believed that Mr. O'Toole, at least, was making those efforts through October 2005.  Pl.'s Ex. 61 (Faison Decl. ¶ 4).  Indeed, a reasonable juror could conclude from the record that Faison's request for reassignment to Main GPO was not an isolated occurrence, but rather part of an ongoing effort to seek an accommodation to ease the burden of her commute to Laurel.  *See* Pl.'s Stmt. ¶ 31 (asserting that the GPO had received further instructions from Faison's doctor limiting her driving distance to and from work in May 2005, and again in October 2005); Pl.'s Stmt ¶ 42 (noting requests made to two managers in her division).  Furthermore, although failing to satisfy her request for reassignment to Main GPO, the GPO did, in the weeks and months following her return from surgery, make some effort to

accommodate her disability by restructuring Faison's hours.  It is undisputed that in April 2005, Faison's then supervisor, Janet McCaskill, entered into a Memorandum of Understanding with Faison ("McCaskill MOU"), whereby Faison was permitted to work reduced hours, from 9 a.m. until 3:30 p.m. daily "in accordance with her doctor's instructions."  Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 4; Def.'s Ex. 29 (McCaskill MOU).  The McCaskill MOU, which ran through April 29, 2005, contained a provision stating that the agreement "w[ould] be updated periodically as necessary." *Id*.  In her formal complaint in Agency Case No. 06-05, Faison stated that this agreement was "in sync" with her doctor's recommendation in that a shortened day was necessary due to her "ha[ving] to drive a greater distance to get to Laurel."  Def.'s Ex. 2 (EEO Complaint in Agency Case No. 06-05), at 7.  However, Faison asserts that once Mr. Troupe discovered that she was working those hours, in or around October 7, 2012, he instructed Leola Keaton, another supervisor in Faison's office, to charge Faison with leave if she did not arrive for work by 7:30 a.m.  *Id*.  On November 7, 2005, Faison was notified in writing by Arthur Miles, who had by that time replaced Ms. McCaskill as Faison's immediate supervisor, that Faison was to work from 7:30 a.m. until 4:30 p.m. each day, as none of the managers at Laurel had any alternate work schedule privileges.  Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶ 6.

Viewing these facts in a light most favorable to Faison, this Court concludes that a reasonable fact-finder could credit Faison's statement that she believed GPO management was continuing to search for a suitable position at Main GPO through October 2007.  Similarly, a reasonable jury could infer that because Faison's hours were initially limited upon her commencing work at Laurel, the consequences of the daily commute to Laurel for her disability was not as pronounced, and it was only on November 7, 2005, when Faison received written notification of her lengthened schedule and after two additional requests from her doctors were

ignored, when Faison "reasonably suspected" that she was the victim of disability discrimination

on the basis of the GPO's failure to reassign her to Main GPO or to find some other reasonable

accommodation to alleviate the effects of the daily commute to Laurel on her disabilities.

*Johnson v. Gonzalez*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007)

Finally, even absent a genuine dispute on the issue of "reasonable suspicion," the Court

notes, and the GPO acknowledges, that one of the medical reports which formed the basis for

Faison's Agency Claim No. 06-05 lists as a restriction that Faison "drive no longer than 18 to 20

miles per day concerning her right knee injury."  Def.'s Mem. at 25; Def.'s Ex. 1 at 15 (October

12, 2005 Medical Report).  Although the October 12, 2005 Medical Report does not directly

request reassignment to Main GPO, the accommodation requested therein, that Faison's

commute be limited – especially in light of Faison's alleged earlier, specific requests for

reassignment to Main GPO upon her return to work after carpal tunnel surgery several months

before, could fairly be viewed as a renewed request for transfer to Main GPO, or, at the very

least, for some other accommodation with regard to Faison's commute to Laurel.  Accordingly,

even narrowly construing the exhaustion value of Agency Claim No. 06-05 to cover only

discrete acts of disability discrimination occurring within forty-five days of Faison's November

20, 2005 contact with the EEO counselor, a reasonable fact-finder could certainly conclude that

the October 12, 2005 Medical Report contains a renewed request for an accommodation of her

commuting limitations.  For all of the foregoing reasons, Claim One (b) survives summary

judgment.

Regarding Claim One (c) – the GPO's alleged failure to promptly provide Faison with

working voice-activated computer equipment to reduce the stress on her wrists – the GPO argues

that this, too, has not been sufficiently exhausted due to Faison's failure to timely file a charge of

discrimination on this basis with the EEOC.  Def.'s Mem. at 5, 19–20.  Faison argues that the

failure to deliver and install these items, and render them functional had been an ongoing

condition, and that the GPO had not established a date on which it became a discrete act of

discrimination requiring the filing of a discrete charge of discrimination.   Pl.'s Opp'n at 10.  At

this juncture, the Court need not resolve the question as to when, if ever, the GPO's alleged

undue delay in providing Faison with working voice-activated computer equipment constituted a

discrete act because it reads Faison's formal complaint in Agency Case No. 06-05 as sufficiently

charging the GPO with its alleged wrongdoing concerning this claim.

　　　To be sure, Faison's formal complaint in Agency Case No. 06-05 nowhere directly

alleges that GPO unduly delayed providing Faison with the voice-activated equipment she

needed.  Def.'s Ex. 2 (EEO Complaint in Agency Case No. 06-05).  Nor could it, as it is

undisputed that the parties had discussed the provision of this equipment for the first time only

shortly before Faison had contacted an EEO counselor in connection with Agency Case No. 06-

05.  *See* Def.'s Mem. at 20; Pl.'s Opp'n at 10.  Notwithstanding the foregoing, the formal

complaint in Agency Case No. 06-05 clearly put the GPO on notice of Faison's need for the

equipment, or for some comparable accommodation for her wrists, and that such need had not

yet been met.  *See* Def.'s Ex. 2 at 6–7 (EEO Complaint in Agency Case. No. 06-05) (stating

"how [Faison's] hands, wrists, and forearms were being affected by [her] typing on [her]

computer without the proper keyboard" and discussing the efforts that had been made by that

time regarding "look[ing] into purchasing the [voice-activated computer program] for [Faison]").

　　　The purpose of a charge to the EEOC is to "give [the] agency a chance to act on it."  *See*

*Marshall*, 130 F.3d at 1098.  *See also Park*, 71 F.3d at 907 (noting that the exhaustion rule

"services the important purpose of giving the charged party notice of the claim") (internal marks

omitted).  "[T]he law does not hold an employee to the use of magic words to make out a proper

discrimination charge.  Instead, a plaintiff must only alert the EEOC and the charged employer

with the nature of the alleged wrongdoing." *Johnson-Parks v. D.C. Chartered Health Plan*, 806

F.Supp.2d 267, 270 (D.D.C. 2011) (internal citation and quotations omitted).  To determine

whether the EEOC and the charged employer have been adequately notified, "the Court

considers, *inter alia*, whether the claim is like or reasonably related to the allegations of the

charge and growing out of such allegations and arises from the administrative investigation that

can reasonably be expected to follow the charge of discrimination."  *Id*. (internal citations and

quotations omitted).

Certainly, Faison's complaints regarding the damage to her wrists resulting from "typing

on [her] computer without the proper keyboard" and her reference to a "voice-activated

computer program" that management had been considering but had not yet purchased should

have sparked an investigation into the timing and adequacy of the GPO's efforts to provide this

accommodation.  Def.'s Ex. 2 at 6–7 (EEO Complaint in Agency Case. No. 06-05).

Accordingly, the Court declines to grant summary judgment for failure to exhaust Claim One(c).

*Compare Carroll v. England*, 321 F. Supp. 2d 58, 65–66 (D.D.C. 2004) (holding that plaintiff

failed to exhaust administrative remedies with regard to claim for untimely provision of

ergonomic chair because plaintiff's "terse reference to back pain," with no more, in an EEOC

complaint alleging failure to accommodate migraine headaches "did not serve to put the

employer on notice of the more specific allegation that it failed to provide, in a timely fashion, an

ergonomic chair").  To the extent the GPO is arguing that complaints about undue delay in the

GPO's provision of the computer equipment would have been premature at the time of the filing

of Agency Case. No. 06-05, it is this Court's view that when, if ever, any alleged delays in

accommodating Faison amounted to a violation of the ADA is a question pertaining to the merits of Faison's claim, not to exhaustion.  Here, notice of an unfulfilled request for voice-activated computer equipment was clearly provided to the GPO.

For the foregoing reasons, the Court declines to hold that Faison has failed to exhaust her administrative remedies with respect to Claim One or any of its component sub-claims (a)–(d).

### 2. Genuine Disputes of Material Fact Exist Regarding the Reasonableness of GPO's Efforts to Accommodate Faison's Claimed Disability.

The GPO next argues that, even if Faison had sufficiently exhausted the entirety of Claim One, this claim must necessarily fail on its merits because the GPO did not improperly fail to accommodate Faison's disability.  Specifically, the GPO argues that it was not obligated to grant Faison's requests because she failed to appropriately make such requests in accordance with the Agency's prescribed method, and that, in any event, the GPO did engage Faison in an interactive process and, although it did not grant Faison's preferred accommodations, did, in fact, sufficiently accommodate her needs.  *See* Def's Mem., at 24–25; Def.'s Reply, at 6–7.  Because the Court determines that genuine disputes of material fact exist with regard to each of these issues, summary judgment on Faison's Failure to Accommodate Claim must be denied.

The ADA requires covered employers to "mak[e] reasonable accommodations to the known physical or mental limitations" of an employee.  42 U.S.C. § 12112(b)(5)(A).  This provision requires an "employer [to] be willing to consider making changes in its ordinary work rules … in order to enable a disabled individual to work."  *Vande Zande v. Wisconsin*, 44 F.3d 538, 542 (7th Cir. 1995).  Under the ADA, the term "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devises … and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Importantly, in any action premised on failure to accommodate, the plaintiff typically bears the burden of providing notice of her disability and the limitations it imposes, *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 897–98 (D.C. Cir. 1998).  The plaintiff similarly bears the burden to request any needed accommodation.  *See Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).  "[A]n employer is not required to provide an employee that accommodation [s]he requests or prefers; the employer need only provide some reasonable accommodation."  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d at 1305 (citations omitted).   In order to determine the appropriate reasonable accommodation, the employer may need to "initiate an informal, interactive process with the individual with a disability in need of accommodation," which "process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3). An employer that declines to take reasonable steps to accommodate an employee's disability is liable under the ADA, unless it can demonstrate that the steps in question "would impose an undue hardship on the operation of [its] business."  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d at 1300.

The GPO nowhere argues that granting any of Faison's specific requests – namely, her requests for limited hours, reassignment to Main GPO, and voice-activated computer equipment – would have resulted in undue hardship.  Rather, the GPO argues that it possessed legitimate, nondiscriminatory reasons for acting as it did.  Def's Mem., at 24–25; Def's Reply, at 2–7. Essentially, the single legitimate reason the GPO provides for declining to grant Faison's requests is that it simply was not required to do so.

First, the GPO argues that it was not required to accommodate Faison's alleged requests for a change in hours and/or workstation because Faison failed to make such requests in accordance with the GPO's prescribed procedures for making requests for reasonable

accommodation. *See* Def.'s Mem. at 25. Specifically, the GPO alleges that all requests for light duty must be made to the requester's immediate supervisor and/or filed with the GPO's EEO Office, *see* Def.'s Mem. 25–26, and that Faison instead sent her requests for reduced hours and a change in workstation, along with all supporting documentation, to Mr. Troupe, who is Chief of the Worker's Compensation Office and not in Plaintiff's line of supervision. *Id.* The GPO does little to expound upon this argument. To be sure, an employer is under no duty to provide a reasonable accommodation if it is not aware of an individual's disability; "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested" – or at least made known her need for – "an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). But here, the GPO nowhere asserts that the manner in which Faison made her requests resulted in a lack of notice to the GPO of Faison's disability or need for accommodation. *See generally* Def.'s Mem.; Def's Reply. Even if it had, the GPO has not, and could not, show the absence of a genuine dispute of fact in this regard. To the contrary, a reasonable fact finder could certainly credit the evidence presented by Faison, including deposition testimony from Faison's supervisors themselves, as establishing that several of Faison's supervisors were aware of her disability, her specific requests, and the effect that the failure to accommodate those requests was having on her physical health. *See, e.g.*, Pl.'s Stmt. ¶¶ 30–31, 34, 42, 51–52, Pl's Ex. 41 (Declaration of Arthur Miles ("Miles Decl.")), at 2; Pl.'s Ex. 59 (Deposition of Arthur Miles ("Miles Dep."), 22–23). A jury could similarly give weight to the fact that Mr. Troupe, although not Faison's supervisor for most of the time period relevant to her complaint, was her assigned supervisor prior to her return to work after carpal tunnel surgery, as well as her main point of contact during this time. *See* Pl.'s Stmt. ¶¶ 18–27. Accordingly, absent uncontroverted evidence of a lack of

notice by the GPO of Faison's disability, the Court declines to grant the GPO summary judgment based on its conclusory assertion that Faison's failure to follow its prescribed procedures in exacting detail in itself disqualifies her from seeking a reasonable accommodation, or pursuing a remedy for the failure to provide one. *See, e.g.*, *Loya v. Sebelius*, 840 F. Supp. 2d 245, 259 (D.D.C. 2012) (finding genuine dispute regarding whether plaintiff had requested an accommodation and noting that "the notice or request for a reasonable accommodation 'does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation'' as long as it 'make[s] clear that the employee wants assistance for his or her disability'" (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999))).

Pressing on, the GPO contends that to the extent Faison's requests for light duty were related to on-the-job injuries, the ability to grant such requests rests in the hands of the Department of Labor ("DOL"), not the GPO. Def.'s Mem. at 25. Again, the GPO fails to expound upon the rationale behind or purpose of this argument. For what it's worth, the parties do not dispute that to the extent Faison was requesting compensation for unworked hours due to on-the-job injuries, she would have to apply to DOL. *See* Def.'s Mem.at 25. But the GPO presents no explanation as to why a request for compensation to the DOL should preclude a separate request for reasonable accommodations, unrelated to compensation, in the form of limited work schedule, a change in work station, and/or voice-activated computer equipment, simply because the disability giving rise to the need for such accommodations was the result of an on-the-job injury. Even generously construing the GPO's argument to assert that Faison's request for limited hours may have been tethered to a request that she also be compensated for

hours she did not work,[9] the GPO has nonetheless failed to show the absence of a genuine

dispute of fact as to whether, at any time after the expiration of the McCaskill MOU shortly after

Faison's return to work after carpal tunnel surgery, it had offered or even discussed with Faison

the option of cutting her hours – with pay or without.[10]

Finally, the GPO argues that even if Faison had made appropriate requests for

accommodation, the GPO made sufficient efforts to reasonably accommodate her disabilities.

Def.'s Reply at 6–9.  Specifically, the GPO contends that it did in fact grant Faison's request for

limited hours upon her return from carpal tunnel surgery in April 2005, by way of the McCaskill

MOU.  *See supra* Part III.A.1(a).  This memorandum also specified that Faison was to avoid

heavy lifting, prolonged bending, stooping, standing, walking, and pushing and pulling heavy

objects; provided Faison access to a personal carrier; and allowed 15 minutes of rest per hour

when performing typing and a flexible lunch time.  Def.'s Reply at 7; Def.'s Ex. 29 (McCaskill

---

[9] The GPO asserts, in passing, that Faison could have worked less than eight hours per day, but
the GPO could not pay her for the hours she did not work.  Def.'s Mem. at 25; Def.'s Reply at 6–
7; Def.'s Stmt. ¶ 11 (citing Troupe Decl., at 3).

[10] Related to its argument that the DOL, not the GPO, would be the appropriate recipient of
Faison's accommodation requests where such request were related to on-the-job injuries, the
GPO likewise argues, for the first time on reply, that the Court must decline to review Faison's
ADA claims because Faison's light-duty position at Laurel was approved by the DOL, Office of
Workers' Compensation Programs.  To rule otherwise, the GPO contends, would be to permit an
impermissible collateral attack on a final and unreviewable factual determination by the DOL.
Def.'s Reply at 2–4 (noting that pursuant to the Federal Employees' Compensation Act, 5 U.S.C.
§ 8128(b) ("FECA"), legal and factual determinations by the Secretary of Labor regarding
compensation for federal disability status are not reviewable).  By waiting until its reply to raise
this point, the GPO has deprived Faison of an opportunity to render a full and fair response.
Under these circumstances, the Court exercises its discretion to decline to address this argument
at this time.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007), *aff'd sub nom*.
*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ("If the movant raises arguments for the
first time in his reply to the non-movant's opposition, the court [may] either ignore those
arguments … or provide the non-movant an opportunity to respond.").  Furthermore, the law on
this matter is unsettled, and a number of courts have held that the FECA did not, in those cases,
bar plaintiff's discrimination claims.  *See Williams v. Tapella*, 658 F. Supp. 2d 204, 210-211
(discussing cases).  The Court declines to reach this complex issue in the absence of adequate
briefing from the parties.

MOU).  In addition to these accommodations, the GPO also provided Faison with an ergonomic keyboard, ergonomic chair, and voice-activated typing software.  Def.'s Reply at 7.  Although Defendant acknowledges that these requests were made in October 2005, and Faison did not receive her ergonomic keyboard and chair until December 2007, and the typing software in December 2008, Defendant contends "[t]here is no evidence that the delay was in any way intentional or motivated by disability discrimination." *Id*. at 8.

In short, the Court finds the foregoing assertions far from sufficient to support summary judgment.  It is undisputed that the term of the McCaskill MOU ended on April 29, 2005, and although the agreement contained a provision that it would be "updated periodically as necessary," it was never provided to Faison's subsequent supervisor, Arthur Miles, when Ms. McCaskill left to take another position.  *See* Def.'s Mem. at 7.  It is also undisputed that, despite having received medical reports in October 2005 requesting that Faison's daily hours and commute be limited to five to six hours and eighteen to twenty miles respectively, in November of 2005, Mr. Miles gave written notification to Faison instructing her to work from 7:30 a.m. until 4:30 p.m., explaining that none of the managers at Laurel had any alternate work schedule privileges.  Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶ 6; Pl.'s Ex. 59 (Miles Dep. 25:5–26:15, 30:12–32:5. The GPO has put forth scant evidence to show why it resumed Faison to a full-time schedule in the fall of 2005 and no evidence whatsoever as to why it declined to limit Faison's hours in accordance with her doctors' requests or that it attempted, at any point, to discuss with Faison why it could not.  *See generally* Def.'s Mem.; Def.'s Reply.  While a reasonable fact-finder could credit Mr. Miles' statement that none of the managers at Laurel had any alternate work schedule privileges, so too could it credit Faison's testimony that such was not the case.  *See* Pl.'s Stmt. ¶ 62.  Moreover, the GPO has put forth no evidence to show that Faison's originally

flexible schedule resulted in *any* hardship to the agency, much less one that is "undue."  In short, the GPO has failed to show the absence of a factual dispute bearing on the reasonableness of the efforts that were made to accommodate Faison's request for limited hours.

Regarding Faison's requests for reassignment to a temporary or permanent position at Main GPO for the purpose of alleviating the alleged pain and other consequences resulting from her daily commute to Laurel, *see* Pl.'s Stmt. ¶ 35, the GPO contends that that it simply was not required to grant these requests.  Def.'s Mem. at 5; Def's Reply at 8–9.  Specifically, it argues that, beyond speaking in generalities about the size and budget of Main GPO, Faison has failed to show that there were any actual, vacant positions at Main GPO for which she was qualified and which met her restrictions.  Def.'s Reply at 8–9.  Although the ADA does contemplate "reassignment to a vacant position" as a potentially reasonable accommodation, *see* 42 U.S.C. § 12111(9)(B), as the GPO correctly argues, it is the "plaintiff's burden to identify available positions and to demonstrate that she was qualified for those positions."  Def.'s Reply at 8 (citing *Lester v. Natsios*, 290 F. Supp. 2d 11, 25 (D.D.C. 2003)).  If no suitable position exists, an employer is not "obligated to 'bump' another employee in order to create a vacancy for the disabled employee"; nor must the employee "create a new position for the disabled employee." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1998); *see also McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 4–5 (D.C. Cir. 2010) (affirming that employee's request for reassignment to a receptionist position was not a reasonable accommodation where there was no vacant receptionist position).  In this regard, the GPO maintains that, although Faison may have preferred the light duty position she had held at Main GPO prior to her carpal tunnel surgery, this detail was no longer available upon her return to work in April 2005.  Def. Reply at 8; Def.'s Stmt. ¶ 3; Pl. Stmt. ¶ 3.  However, the record reflects

that the position was available several months prior, when Faison alleges she first notified the GPO of her readiness to return to work.  *See* Pl.'s Ex. 42 (Letter from Albert Troupe to DOL, Division of Federal Employees' Compensation dated March 2, 2005 ("[As of January 24. 2005], [b]oth [Faison's] permanent position of record and her detail position met her restrictions and were available for her return to full or partial duty"); Def.'s Ex. 39 (Letter from Albert Troupe to DOL, Division of Federal Employees' Compensation dated March 10, 2005 ("Both her permanent position of record and her detail position (which is no longer available) met her restrictions and were available for her return to full or partial duty before … March 3, 2005."). The parties do not dispute that Faison's treating physician cleared her to return to work as of January 24, 2005.  Def.'s Stmt. ¶ 3; Pl.'s Ex. 61 (Faison Decl. ¶ 14).  The GPO contends, through Mr. Troupe, that Faison failed to notify the GPO of her availability for light duty when she was first notified by her doctor in January 2005, see *id*., and that due to "some confusion" between Faison, the DOL, and the GPO, she did not return to work until April 14, 2005.  Def.'s Stmt. ¶ 3.  Faison, on the other hand, disputes that there was any "confusion" or misconduct on her part but rather, contends that she was instructed by the DOL-assigned intervention nurse, who accompanied Faison to her January 2005 medical appointment, not to return to work until Faison was contacted by the GPO, because the intervention nurse first would have to work with Mr. Troupe to identify a light duty assignment that met Faison's restrictions.  Pl.'s Stmt. ¶ 3; Pl.'s Ex. 61 (Faison Decl. ¶14).  Faison also presents evidence from which a reasonable jury could infer that this fact was communicated to Mr. Troupe.  *See* Pl.'s Stmt. ¶ 27.  Further, Faison alleges that Mr. Troupe ignored her attempts to reach out to him during this period, and when he finally did contact her, he questioned the credibility of her doctor's recommendations, demanded that she report to Laurel or face termination, and went so far as to send

correspondence to the DOL recommending denial of her workers' compensation benefits and

possible civil and/or criminal prosecution against her for fraudulent activity, without speaking to

Faison, Faison's doctors, the DOL intervention nurse, or conducting any other investigation of

his own before so doing.  *See* Pl.'s Stmt. ¶ 24; Pl.'s Ex. 42 (Letter from Albert Troupe to DOL,

Division of Federal Employees' Compensation dated March 2, 2005); Def.'s Ex. 38 (Letter from

Albert Troupe to DOL, Division of Federal Employees' Compensation dated March 10, 2005);

Pl's Ex. 58 (Troupe Dep. 22:17–24:18; 38:14–41:10).  Because a genuine dispute of fact exists

as to whether a vacant position was available at the time Faison first made her commuting

difficulties known to GPO, as well as to which party bears responsibility for the delay in

Faison's return to work after carpal tunnel surgery, summary judgment on this reasonable

accommodation claim shall not be granted. [11]  The Court also notes that, even absent a duty to

reassign Faison to Main GPO, the GPO does not present any evidence that it considered, or

discussed with Faison alternative accommodations to alleviate the burden of a long commute,

such as, for example, extending the shortened work schedule initially granted to Faison as an

accommodation pursuant to the McCaskill MOU.  *See Carr v. Reno*, 23 F.3d 535, 529 (D.C. Cir.

1994) (In evaluating whether a reasonable accommodation is feasible, the Court should "ask

simply whether any reasonable accommodation would have allowed [the plaintiff] to perform all

---

[11] The GPO also raises, for the first time on reply, an argument that under the ADA, an employer
is required to provide reasonable accommodations that eliminate barriers in the work
environment, not those outside of the work environment, and that a number of courts have held
that an employee's commute to work falls outside of the scope of employment.  *See* Def.'s Reply
at 4–6 (citing cases).  The Court declines to grant summary judgment on this basis.  First, by
waiting until its reply to raise this point, the GPO has deprived Faison of an opportunity to render
a response, and the Court may exercise its discretion to disregard the GPO's argument at this
time.  *See Baloch v. Norton*, 517 F.Supp.2d 345, 348 (D.D.C. 2007), *aff'd sub nom*. *Baloch v.
Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008).  Further, the Court observes that the only cases
cited by the GPO in support of its argument are rulings from other districts and as such not
binding on this Court.

the essential functions of her job without creating an undue hardship for the agency."). *See also Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) ("The ADA contemplates that employers may need to make reasonable shift changes in order to accommodate a disabled employee's disability-related difficulties in getting to work.").

Finally, with regard to the GPO's alleged failure to promptly provide Faison with working voice-activated computer software to reduce the stress on her wrists, the GPO asserts that it did in fact provide Faison with the equipment she required. Def.'s Reply at 7. But Faison's claim does not allege a complete failure to provide the computer equipment, but rather, failure to "promptly" provide it. *See* Order (Aug. 17, 2011), at 6. As "[the D.C. Circuit] ha[s] previously suggested, there are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (citing *Mayers*, 478 F.3d at 368). It is undisputed that the GPO began "working on ordering the keyboard and software" in October 2005. Def.'s Reply at 7. *See also* Def.'s Ex. 2 (EEO Complaint in Agency Case No. 06-05), at 7. The GPO acknowledges that Faison did not receive the typing software until December of 2008, *see* Def.'s Reply at 7, and Faison alleges, and the GPO nowhere disputes, that it was not until mid–2009 when it was installed properly and activated for her use. Pl.'s Stmt. ¶ 50. Beyond a vague assertion that "there is no evidence that the delay was in any way intentional," the GPO does not proffer any explanation for this more than three year delay. Def's. Reply at 7. Accordingly, this Court declines to find as a matter of law that the GPO reasonably accommodated Faison's claimed need for voice-activated computer equipment. *Compare Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001) (less than six month delay in accommodating plaintiff's sinus problems did not amount to a failure to reasonably

accommodate where the defendant hired a consultant to conduct air-flow testing, complied with the consultant's recommendations, ultimately made the changes the employee requested, and never denied the employee's requests for leave).

Finally, regarding Faison's more general allegation that the GPO failed to engage in an interactive process to accommodate her claimed disability, the GPO submits that this is not an independent cause of action, and that, in any event, Faison has made no showing to support this claim.  Def.'s Reply at 5, 26.  Once an employer knows of the disability and the employee's desire for accommodation, it is incumbent on the employer to make a reasonable effort to determine the appropriate accommodation.  *See Woodruff v. LaHood*, 77 F. Supp. 2d 33, 41 (D.D.C. 2011) (citing 29 C.F.R. § 1630.2(o)).  In order to determine the appropriate reasonable accommodation, the employer may need to "initiate an informal, interactive process with the individual with a disability in need of accommodation," which "process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. §1630.2(o)(3).  Employers can demonstrate that they have engaged the employee in good faith in an interactive process in any number of ways, including by taking the following steps: "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome."  *Woodruff*, 77 F. Supp. 2d at 41–42 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999)).  To the contrary, "the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation."  *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005) (citing *Picinich v. United Parcel*

*Serv.*, 321 F. Supp. 2d 485, 514 (N.D.N.Y. 2004).  Although the GPO is correct in that the interactive process "is not an end in itself," "if a jury [can] conclude that [an employer] failed to engage in good faith in the interactive process, and that failure led to [the employer] not according reasonable accommodations to [the employee] in a timely manner, summary judgment cannot be granted."  *Id.* at 70.

Here, the GPO has failed to show that its efforts to engage in the interactive process and accommodate Faison's disabilities were sufficient as a matter of law.  Even if the GPO reasonably believed that Faison's requests for limited hours and reassignment were unnecessary, the GPO "was still required to engage in an interactive process with [Faison] to design an accommodation that was reasonable."  *See Graffius v. Shinseki*, 672 F.Supp.2d 119, 129 n.13 (D.D.C. 2009).  The GPO points to no evidence in the record that would indicate that it engaged in an interactive dialogue with Faison after it determined that reassignment to Main GPO and/or a limited schedule would be unnecessary, or even to explain to her why it believed the light duty position at Laurel sufficiently accommodated her needs.  By way of illustration, the GPO provided Faison with no response or acknowledgment of receipt of Faison's October 2005 medical reports requesting limited hours and/or a limited commute in October 2005, other than to send a written notice several weeks later instructing her to work from 7:30 a.m. until 4:30 p.m. daily and warning Faison that she would be charged with leave if she did not report to work on time. *See* Def.'s Stmt. ¶ 6; Pl.'s Stmt. ¶¶ 6, 31–35, 41.  Similarly, upon declining Faison's request for reassignment to Main GPO, the record reflects that the GPO made no efforts to meet with Faison to discuss possible alternative means of easing her commuting difficulties, such as modifying her expected arrival or departure time, or whether there were any public transportation options available.  Rather, it wrote to the DOL to question the credibility of her doctor's

recommendations.  *See* Ex. 38 (Letter from Albert Troupe to DOL, Division of Federal

Employees' Compensation dated March 10, 2005).  Viewing these facts in a light most favorable

to Faison, this behavior is, simply put, "not comparable to those of other employers held to have

properly engaged in the interactive process."  *Graffius*, 672 F.Supp.2d at 129 (citing

*Scarborough v. Natsios*, 190 F. Supp. 2d 5, 26 (D.D.C. 2002) (holding that employer engaged in

interactive process when it explained why it rejected plaintiff's leave without pay request and

noted that it would reconsider the request after plaintiff provided beginning and end dates for the

proposed leave period).

For all of the foregoing reasons, the Court finds that genuine questions of material fact

remain regarding the reasonableness of efforts made by the GPO to accommodate Faison's

claimed disabilities.  Accordingly, Claim One survives the GPO's motion for summary judgment

in its entirety.

**B.  Claim Two (Hostile Work Environment)**

Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against

any individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin," 42

U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity

protected by Title VII, *id*. § 2000e–3(a).  Toward that end, an employer may not create or

condone a hostile or abusive work environment that is discriminatory.  *Meritor Sav. Bank, FSB

v. Vinson*, 277 U.S. 57, 64–65, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986).  A workplace becomes

"hostile" for purposes of Title VII only if the allegedly offensive conduct "permeate[s] [the

workplace] with 'discriminatory [or retaliatory] intimidation, ridicule, and insult,' that is

'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 57, 65, 67 (1986)). This standard, occasionally referred to as the *Meritor–Harris* standard, has an objective component and a subjective component: the environment must be one that a reasonable person in the plaintiff's position would find hostile or abusive, and the plaintiff must actually perceive the environment to be hostile or abusive. *Id.* While the subjective test may be readily satisfied in employment discrimination claims, the objective test requires examination of the "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). As the Supreme Court has explained, these "standards for judging [workplace] hostility are sufficiently demanding to ensure that Title VII does not become a general civility code," and are designed to "filter out complaints attacking the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788 (internal citations omitted). Importantly, in navigating these standards, this Court remains mindful of the premise on which all Title VII claims must be based; "hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Nguyen v. Mabus*, __ F. Supp. 2d __, Civ.A. No. 09-1349, 2012 WL 4475670, at *20 (D.D.C. Sept. 30, 2012).

　　　　Here, Faison alleges a single claim for hostile work environment and/or a pattern of conduct alleged to have been retaliatory and/or discriminatory on the basis of disability, race, sex, and/or age. Order (Aug. 17, 2011), at 6. The GPO argues that, inasmuch as many of the component parts upon which Claim Two is based are in reality discrete acts of alleged

discrimination that were not timely included in any administrative complaint, these claims should be dismissed because of Faison's failure to exhaust her administrative remedies.  Def.'s Mem. at 5–7, 16–22, 27–29.  Further, the GPO argues, even if Faison had properly exhausted her administrative remedies, it should be awarded summary judgment on Claim Two because viewing the facts in a light most favorable to Faison, Faison has failed to demonstrate that she was subjected to a hostile work environment based on discrimination on the basis of her disability, race, sex, or age, or in retaliation for any protected activity.  Because the Court agrees that Faison has failed to show the existence of any triable issue of fact requiring trial on the merits of her Hostile Work Environment Claim, the Court need not address the GPO's exhaustion arguments.[12]  Accordingly, for the reasons set forth below, the Court shall grant the GPO's motion for summary judgment on this claim, and dismiss Claim Two in its entirety.

### 1.    Faison Has Failed to Assert a Single Hostile Environment Claim.

As the GPO correctly observes, the majority of incidents that Faison has identified in support of Claim Two are in actuality "discrete acts" that cannot be considered part of a hostile work environment or pattern claim.  *See* Def.'s Mem. 28, Def.'s Reply 9–10.  The GPO views Faison's approach as an effort to "resuscitate claims suffering from timeliness issues and a general lack of merit."  Def.'s Mem. at 9.  Whatever Faison's strategy, courts in this Circuit

---

[12] The Court also observes that, although it harbors serious doubts as to whether Faison has exhausted the entirety of Claim Two or whether all of its component parts are sufficiently part of the same unlawful employment practice so as to obviate the need for exhaustion on each count, it should be noted that "the exhaustion of administrative remedies requirement is less stringent for hostile work environment claims than for discrete claims of discrimination or retaliation." *Adams v. Dist. of Columbia*, 740 F.Supp.2d 173, 188 (D.D.C. 2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (holding that a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period")).  Because the Court finds that Faison's Hostile Work Environment Claim necessarily fails on its merits, it need not, and in the interests of judicial economy, shall not address this complex issue.

"frown[] on plaintiffs who attempt to bootstrap their alleged discrete acts of [discrimination or] retaliation into a broader hostile work environment claim." *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch*, 550 F.3d 1191; see also *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19–20 (D.D.C. 2011).  Consistent with this, courts in this Circuit "are often hesitant to allow plaintiffs to bring suit under a hostile work environment theory based on nothing more than an amalgamation of loosely related discrete acts." *Mason v. Geithner*, 811 F. Supp. 2d 128, 178 (D.D.C. Sept. 12, 2011).  For example, "if certain actions are so remote in time or different in kind that a reasonable trier of fact could not find them to be part of the same work environment, then those actions should not be considered" in evaluating the merits of the overall claim.  *Id.* (citations omitted).  While "[t]hat does not mean that it will always be necessary for the component-acts comprising a hostile work environment to be identical or take the same form," there nonetheless "must be a 'common thread' among them."  *Id.*

Throughout the course of this litigation, and as part of its efforts to guide the parties in crafting their submissions, this Court has gone to great lengths to provide Faison a full and fair opportunity to explain the basis of her claims.  Indeed, in its [46] October 21, 2011 Memorandum Order, the Court specifically cautioned Faison that, "[I]t is incumbent upon her to come forward with some explanation as to how her claim actually *works* under a hostile work environment[/pattern] theory" and advised her to "'crystallize [in her briefing] for the Court how [] disparate acts could be seen by a trier of fact as sufficiently related to coalesce into a single hostile work environment' or pattern of misconduct." Order (Oct. 21, 2011), at 6 (citing *Mason*, 811 F. Supp. 2d at 179).

Notwithstanding, Faison provides no meaningful explanation as to how the various component acts she alleges under Claim Two congeal into a single hostile work environment

claim, electing instead to restate the skeletal allegations concerning her claim and conclude merely that "[t]he unifying threads are intimidation, negative treatment ranging from disrespect to cruelty, and persistent abuse with respect to basic incidents of employment." *See* Pl.'s Opp'n 15–17, 19. Depending on how they are framed, Faison identifies somewhere in the neighborhood of fifteen to twenty component acts under the umbrella of her hostile work environment claim. These acts span from April of 2005 through September 2007, involve at least eight GPO employees in different sections of the GPO, and at different supervisory (and non-supervisory) levels, some of whom worked at different locations than Faison. *See* Def.'s Reply at 9–10; Order (Aug. 17, 2011), at 6; Pl.'s Stmt. Meanwhile, several of the component acts identified by Faison in support of her claim appear, on their face, to be the sort of discrete employment actions that are not readily incorporated into a hostile working environment claim, including, but not limited to the GPO's alleged denial of overtime work, the giving of a poor performance evaluation, and failure to promote. *See* Order (Aug. 17, 2011), at 6.

Where, as here, a plaintiff adopts a "kitchen sink" approach to crafting a hostile work environment claim, the Court can only conclude that these acts are so different in kind and remote in time from one another that they cannot possibly comprise part of the same hostile work environment. Based on the record created by the parties, the Court concludes that the GPO is entitled to summary judgment in its favor on Faison's Hostile Work Environment Claim on this basis alone.

> **2. Faison Fails to Adduce Sufficient Evidence that Would Permit a Reasonable Trier of Fact to Conclude that the Component Acts of her Hostile Workplace Environment Claim Were Based on Her Protected Activity and/or Protected Class, or that Such Alleged Acts Were Sufficiently Severe or Pervasive as to Rise to the Level of a Hostile Working Environment.**

Faison has not produced any evidence – direct or circumstantial – sufficient to "establish a causal connection between the [alleged] harassment and [her] protected activity [and/or protected class]." *Lewis v. Dist. Of Columbia*, 653 F. Supp.2d 64, 81 (D.D.C. 2009).  Without exception, Faison has stated the alleged component acts in such summary and cursory form that they lack any indicia of retaliatory or discriminatory animus of any kind.[13]  Instead of citing to competent evidence in the record, she relies upon entirely unsupported and non-specific allegations that her supervisors were somehow guided by an improper motive.[14]  *See* Pl.'s Opp'n at 21.  Where the GPO has proffered a non-retaliatory reason for a specific act, Faison has offered no contradictory evidence that would allow a reasonable trier of fact to conclude that the proffered reason was pretextual.  *See Graham v. Holder*, 657 F. Supp. 2d 210, 217 (D.D.C. 2009).

---

[13] As with Faison's "kitchen sink" approach to her Hostile Work Environment Claim, the Court similarly cautioned Faison in its October 21, 2011 Memorandum Order about the apparently "facially neutral" nature of her identified component acts and stressed the importance of establishing a causal connection between the allegedly hostile environment and/or pattern of conduct and Faison's protected class and/or activity.  *See* Order (Oct. 21, 2011), at 7–8 ("Because 'evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim,' 'courts should exclude from consideration employment actions that 'lack a linkage' to discrimination or retaliation." (citing *Mason*, 811 F. Supp. 2d at 178)).

[14] Furthermore,  the vast majority, if not all, of the component acts identified by Faison are so trivial that no reasonable trier of fact could conclude that they would meaningfully contribute to a severe or pervasive hostile work environment or have any "tangible impact on the terms, conditions, and privilege of her employment." *See Nuskey v. Hochberg*, 657 F. Supp. 47, 57 (D.D.C. 2009).  The GPO's motion papers highlight helpful examples in this respect.  *See* Def.'s Mem. at 23–24 (allegations that she was not included in certain meetings; that her travel reimbursement form was unfairly scrutinized when Mr. Miles' administrative assistant checked the mileage Faison had claimed against Mapquest; that she  received "aggressive and insulting" emails in response to work-related questions or statements; and that she received a rating of "fully successful" instead of "outstanding" on two elements of her 2005 performance evaluation but at no point alleged that the performance evaluation had any negative effects on her employment) (citations to the record omitted).  In her opposition, Faison provides no explanation regarding how such acts could possibly be viewed as sufficiently hostile or abusive to meaningfully contribute to a hostile work environment claim.

Take, for example, Faison's claims regarding her direct supervisor, Arthur Miles.  Faison asserts that Mr. Miles sends her "aggressive and insulting e-mails; berates her in front of others; ignores her when officials visit from Main GPO, rather than introducing her," "requires her to call him every day upon her arrival to work," "excludes her from staff meetings," and permits his assistant, Diana Mayernick to make "derogatory statements" to her.  *See* Pl.'s Stmt. ¶¶ 54, 60. As the GPO correctly observes, *see* Def.'s Reply at 13–15, Faison's only evidence concerning each of these allegations is found in her Declaration Opposing Summary Judgment and is vague and conclusory at best.  Faison makes no attempts whatsoever to describe the content of Mr. Miles' e-mails or to describe what, exactly, Mr. Miles has said to "berate" her beyond discussing her tardiness (or to provide any detail regarding the frequency, location, or witnesses to these discussions in support of her allegation that they were "public").  She likewise fails to provide any meaningful factual support for her allegation that Mr. Miles "ignores" her when "officials" from Main GPO visit Laurel, to provide any details regarding the time period during which Mr. Miles allegedly required her to check in every morning or why this was done, to provide examples or descriptions of the "derogatory" statements Mr. Miles' assistant has made – or, importantly, to provide any allegation or factual support whatsoever tying such conduct to her membership in a protected class or her protected activity.  *See* Pl.'s Ex. 61 (Faison Decl., ¶7). Further, based upon this Court's own review of Mr. Miles' allegedly offensive emails presented into the record by the GPO, about which Faison complained in an administrative complaint to the GPO's EEO Office, the correspondence reflects nothing more than a supervisor pulling rank regarding operational decisions and contains no language a reasonable fact-finder would find "aggressive" or "insulting," or even remotely discriminatory. *See* Def.'s Ex. 23 (E-mail Chains dated December 8, 2006 & April 26, 2007).  Finally, regarding Faison's claim that Mr. Miles

"excludes" her from certain staff meetings at Main GPO, Faison again presents no meaningful factual content to support this vague assertion, nor any retort to the GPO's assertion that Mr. Miles was not responsible for the scheduling of or invitation list for such meetings.  *See* Def.'s Reply (citing Affidavits of Arthur Miles, Alfred Pino & Lisa Williams).

This defect carries throughout Faison's submissions.  For example, Faison's allegations with respect to Lisa Williams, her second level supervisor, that Ms. Williams "treated [Faison] badly," "sent her nasty and intimidating emails," and stated that "she was going to make Faison so miserable that she would be happy to retire," are not supported by any factual detail and no evidence other than Faison's own declaration.  *See* Pl. Ex. 61 (Faison Decl. ¶ 17).  Similarly, Faison's claim that in February 2006, Mr. Troupe requested the GPO Office of the Inspector General to investigate an on-the-job knee injury and that the Inspector General asked her "offensive" questions in connection with this investigation is supported only by Faison's declaration, which fails to provide sufficient detail from which a reasonable juror could infer discriminatory, retaliatory, or even distasteful conduct by the GPO.  *See* Pl. Ex. 61 (Faison Decl. ¶15).  To survive summary judgment, Faison may not rely solely on allegations or conclusory statements that her supervisors somehow harbored an unlawful or improper animus.  *See Hussain v. Nicholson*, 435 F.3d 359, 365 (D.C. Cir. 2006) (concluding that the district court properly disregarded conclusory allegations of discriminatory animus), *cert. denied*, 549 U.S. 993 (2006).  *See also Ass'n of Flight Attendants*, 564 F.3d at 465–66 (conclusory allegations offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment).

Regarding the GPO's alleged denials of Faison's overtime work and pay, Faison fails to present any evidence from which a reasonable fact-finder could conclude that such denials were

42

motivated by unlawful discrimination or retaliation.  *See* Pl.'s Stmt. ¶ 61.  What is more, Faison

offers no contradictory evidence to support an inference that the GPO's non-discriminatory, non-

retaliatory explanations for not selecting her for the overtime work were pretextual.  Specifically,

regarding Faison's request for overtime related to the dismantling of the Retail Publications

Branch in February 2006, Faison had no training or experience with the Retail Publications

Branch, *see* Def.'s Reply at 11 (citations to the record omitted).  Regarding Faison's request for

overtime related to the relocation and reorganization of the Laurel Warehouse material from July

1, 2007 through November 2007, GPO management had determined that Plaintiff should not be

offered overtime, as she was on light duty as of March 2007.  This given, the GPO concluded she

was unable to engage in the manual labor involved in moving stock around the warehouse;

furthermore, according to the GPO's Master Labor Management Agreement with the Unions, an

individual who is on light duty is not eligible for overtime.  *See* Def.'s Reply at 11–12.

Perhaps most notably, despite the fact that this Court expressly cautioned Faison of the

need to present an evidentiary basis establishing a connection between the component acts of her

Hostile Work Environment Claim and one or more of the protected statuses she has claimed, *see*

Order (Oct. 21, 2011), at 7, Faison devotes no more than one paragraph in her twenty-eight page

memorandum to this issue.  *See* Pl.'s Opp'n at 27–28.  The only workplace conduct that could

possibly relate to Faison's membership in a protected class is Faison's alleged complaint that Mr.

Miles "maintained a workplace in which racist innuendo is tolerated."  Pl.'s Stmt. ¶ 66.

Specifically, Faison alleges that Mr. Miles has tolerated Mr. Salvator calling Ms. Faison racist

and disparaging names, like "Aunt Jemima," and "that woman."  *Id.*  While, if true, such

comments are certainly odious and hostile, Faison fails to allege any detail whatsoever regarding

the timing or frequency of these remarks, or any meaningful factual content to support a finding

that Mr. Miles had actual knowledge thereof or that such remarks were "sufficiently severe or pervasive to alter the conditions of Faison's employment and create an abusive working environment." *Harris*, 510 U.S. 21–22. Accordingly, these bare allegations with no more are insufficient to salvage Faison's Hostile Work Environment Claim.

Because the Court finds no evidentiary basis upon which a reasonable trier of fact could conclude that the alleged component acts of Claim Two were in any way connected to Faison's race, sex, age, disability, or her prior protected EEO activity, this Court declines to send Claim Two to the jury.

## V.    CONCLUSION

For the reasons set forth above, the GPO's [44] Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment shall be **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court shall **ENTER** judgment in the GPO's favor on Faison's claim that she was subject to a hostile work environment and/or a pattern of discriminatory or retaliatory conduct on the basis of disability, race, sex and/or age, because no reasonable fact-finder could conclude that Faison's allegations of wrongful conduct rose to the level of a hostile work environment, or that such alleged conduct was undertaken with the requisite discriminatory or retaliatory intent. The motion shall otherwise be **DENIED**. Accordingly, the only claim to survive the Court's decision today  is Faison's claim that the GPO failed to reasonably accommodate her disability following her return to work on or about April 14, 2005 after undergoing left carpal tunnel surgery by (a) denying her request for "limited duty" and/or to work no more than five to six hours each day; (b) requiring her to commute to Laurel instead of reassigning her to a temporary or permanent position at Main GPO; (c) failing to promptly provide her with working voice-activated

computer equipment to reduce the stress on her wrists; and (d) generally failing to engage in an

interactive process to accommodate her claimed disability.

Date:   October 9, 2012

\_\_\_\_\_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge